**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

BERNARDINA SANCHEZ,

　　　　　Plaintiff,

vs.

AMERICAN POPCORN CO.,

　　　　　Defendant.

No. C04-4115-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

---

**TABLE OF CONTENTS**

*I.  INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . 2
　　*A.  Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . 2
　　*B.  Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*II.  LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
　　*A.  Standards For Summary Judgment* . . . . . . . . . . . . . . . . . . . . 9
　　*B.  Sanchez's Claim Under The FMLA* . . . . . . . . . . . . . . . . . . . 13
　　　　*1.　Serious Medical Condition* . . . . . . . . . . . . . . . . . . 14
　　　　*2.　Request For FMLA Leave* . . . . . . . . . . . . . . . . . . . 18
　　*C.  Sanchez's Disability Claims* . . . . . . . . . . . . . . . . . . . . . 19
　　　　*1.　Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . 20
　　　　*2.　Actual disability* . . . . . . . . . . . . . . . . . . . . . . 20
　　　　*3.　Perceived disability* . . . . . . . . . . . . . . . . . . . . 22
　　　　　　*a.　Prima facie case and causation* . . . . . . . . . . . . . 22
　　　　　　*b.　American Popcorn's legitimate reason* . . . . . . . . . . 25
　　　　　　*c.　Pretext* . . . . . . . . . . . . . . . . . . . . . . . . 26
　　*D.  Sanchez's State Common Law Claim* . . . . . . . . . . . . . . . . . . 27

*III.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# I.  INTRODUCTION AND BACKGROUND

## A.  Procedural Background

On November 22, 2004, Bernardina Sanchez filed a complaint in this court against her former employer, defendant American Popcorn Co. ("American Popcorn"), alleging five causes of action:  claims under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, for failing to provide her with notice of her rights under the FMLA, for failing to provide her with leave under the FMLA, for failing to restore her to her prior position following leave and in discharging her in violation of the FMLA (Count I);  a claim of disability discrimination based on an actual disability, pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, (Count II);  a claim of disability discrimination, again under the ADA,  because she was regarded as disabled by American Popcorn (Count III); a similar disability discrimination claim, under the Iowa Civil Rights Act, Iowa Code Ch. 216 *et seq.*, based on American Popcorn's failure to accommodate Sanchez's disability (Count IV);  and, a state common law claim for retaliatory discharge in violation of public policy.[1]  With respect to her state common law claim, plaintiff Sanchez asserts that she was fired in retaliation for seeking workers' compensation benefits.   Defendant American Popcorn answered Sanchez's complaint on December 7, 2004, denying Sanchez's claims and asserting various defenses.

Defendant American Popcorn has filed a Motion for Summary Judgment on all of Sanchez's claims.  First, in its motion, defendant American Popcorn claims that Sanchez cannot establish a *prima facie* case under the FMLA because she did not suffer from a serious health condition.  Defendant American Popcorn also asserts that Sanchez cannot establish a *prima facie* case under the FMLA because she did not request FMLA notice

---

[1]The court notes that defendant American Popcorn incorrectly characterizes Sanchez's claim in Count IV as being brought under the ADA.

before being terminated. With respect to Sanchez's claims under the ADA and the ICRA, defendant American Popcorn asserts that Sanchez cannot establish a *prima facie* case of disability discrimination because she did not have an impairment that substantially limited one or more major life activities and she did not have a record of such an impairment.[2] Defendant American Popcorn further contends that even if Sanchez is able to establish a *prima facie* case of disability discrimination, it had a legitimate, nondiscriminatory reason for terminating Sanchez's employment. Finally, defendant American Popcorn contends that if the court dismisses the claims found in Counts I through IV, the court should decline to exercise its supplemental jurisdiction over Sanchez's Iowa state common law claim for retaliatory discharge in violation of public policy. Plaintiff Sanchez has filed a timely resistance to defendant American Popcorn's Motion For Summary Judgment.

The court held oral arguments on defendant American Popcorn's Motion For Summary Judgment on August 30, 2006. At the oral arguments, plaintiff Sanchez was represented by Dennis M. McElwain of Smith & McElwain, Sioux City, Iowa. Defendant American Popcorn was represented by Jeffrey L. Poulson of Corbett, Anderson, Corbett, Poulson & Vellinga, L.L.P, Sioux City, Iowa. The court turns first to a discussion of the undisputed facts as shown by the record, then to the standards applicable to motions for summary judgment and, finally, to the legal analysis of the merits of defendant American Popcorn's Motion For Summary Judgment.

---

[2]Although defendant American Popcorn raises the fact that Sanchez did not have a record of a disability, the court notes that plaintiff Sanchez has made no such allegation in her complaint or in her resistance to American Popcorn's Motion For Summary Judgment.

### *B. Factual Background*

The summary judgment record reveals that the following facts are undisputed. Plaintiff Bernardina Sanchez was employed by American Popcorn from November 3, 1997 to October 29, 2003. During that time, she worked principally as a packer, placing bags of microwave popcorn into boxes and placing small boxes into larger boxes. Sanchez was suspended from September 30, 2003, through October 2, 2003, due to a verbal altercation with a co-worker. Sanchez was given written disciplinary warnings regarding unexcused absences and difficulties she had interacting with co-workers.

In early 2003, American Popcorn was involved in a production slowdown caused by the loss of a major customer. As a result of the production slowdown, the number of employees at American Popcorn was reduced from 195 to 164. On February 7, 2003, American Popcorn laid off one security officer because of the production slow down. This was followed, on February 13, 2003, by American Popcorn laying off all the employees on C-shift because of the production slow down. Plaintiff Sanchez was a B-shift employee.

Greg Hoffman, a vice president at American Popcorn who is responsible for and has authority over all human resources issues with the company, testified in his deposition that he knew that employees had to be let go and that Sanchez was at the top of the list due to performance and cooperativeness issues.

Sanchez suffered a work injury on October 14, 2003, when a packaging machine malfunctioned, which required Sanchez to move boxes of product from pallets onto a production table for approximately two hours. She reported her injury to her supervisor on October 15, 2003. Sanchez worked October 14, 2003 through October 17, 2003, Tuesday through Friday, and the following Monday, Tuesday and Wednesday, October 20, 2003 through October 22, 2003. On Wednesday, October 22, 2003, Sanchez was

referred to Dr. Van Balen, the company doctor. Dr. Van Balen diagnosed Sanchez as having a shoulder strain injury and directed that she take Ibuprofen for her injury. Dr. Van Balen cleared Sanchez to return to work so long as the use of her hands, pushing, pulling and overhead lifting was limited.

American Popcorn contends that upon returning to work, Sanchez was placed in the position of assistant machine operator, a position which allowed her to work in a seated position while only using one hand. American Popcorn further contends that Sanchez worked in this position on October 22, 2003 and October 24, 2003. Sanchez disputes these contentions, asserting that she continued to work her regular position as a packer. On October 24, 2003 and October 27, 2003, Sanchez did not report for work. Sanchez contends that she was told by Rosa Bailey, the human resources director at American Popcorn, not to come to work. Rosa Bailey denies that she told Sanchez that she was not to report for work. Rosa Bailey was in charge of monitoring attendance and disciplinary issues. Bailey is bilingual, speaking both English and Spanish, and routinely translated when employees were not proficient in English. Bailey has been the Human Resources Director at American Popcorn since January 17, 2000.

On October 23, 2003, Greg Hoffman received a telephone call from Dr. Van Balen. Hoffman asserts that he was told by Dr. Van Balen that Sanchez's injury would not require any significant follow-up, that at most, Sanchez's injury was a muscle strain and that the level of injury that Sanchez was describing to Dr. Van Balen was not consistent with what he was observing, and that Sanchez was misrepresenting her injury.

American Popcorn's management was under pressure to further reduce its number of employees. On October 23, 2003, a decision was made by Hoffman to terminate Sanchez's employment with American Popcorn. On this date, Hoffman informed Bailey of his decision to terminate Sanchez's employment with American Popcorn. Hoffman

alleges that he made the decision based on both a need to reduce employees and Sanchez's overall employment history. On October 28, 2003, Sanchez was called into the main office of American Popcorn and was told by Hoffman and Bailey that her employment was being terminated.

Following her termination, Sanchez received further treatment from Dr. Van Balen, which included a regiment of physical therapy and change in her medication. Sanchez received no less than nine physical therapy sessions during November 2003. In January 2004, Sanchez was examined by Dr. Brice W. Keppen, who administered injections for Sanchez's left shoulder and prescribed Bextra for Sanchez.[3] Since the termination of her employment at American Popcorn, Sanchez has worked for Quality Hotel, Roland Construction, and Rudy Salem, all on a full-time basis.

While she was an employee at American Popcorn, Sanchez never provided any proof of any medical condition other than her shoulder injury on October 22, 2003, which was diagnosed in Dr. Van Balen's patient notes as "Left shoulder girdle pain-possibly due to overuse syndrome." Defendant's App. at 29.

American Popcorn is an "at will" employer. American Popcorn's employee handbook provides that, if possible, a request for FMLA leave should be made 30 days prior to taking FMLA leave. American Popcorn has posters required by the United States Department of Labor, advising employees of their rights under the FMLA, posted in both English and Spanish.

David Sitzman was the safety director at American Popcorn. In his position,

---

[3]The court notes that Bextra is the brand name of the drug Valdecoxib. It is a COX-2 anti-inflammatory drug which was withdrawn from the United States market in April of 2005. *See* Scott M. Strayer et al., 13 J. AM. MED. INFORMATICS ASS'N, 396 (2006).

Sitzman was responsible for ensuring that employees' job descriptions were consistent with any work restrictions. Craig Nolen is the production supervisor at American Popcorn and was Sanchez's immediate supervisor. During her employment at American Popcorn, Sanchez had five OSHA recordable injuries including, a hand injury in 1998, a knee injury in 2000, another hand injury in 2000, a foreign body in her eye in 2003, and a left shoulder strain in 2003. American Popcorn was aware of Sanchez's knee injury and tried to accommodate her by assigning her to work positions that required little walking and weightlifting. American Popcorn had some difficulty accommodating Sanchez due to the functional limitations related to her knee injury.

Craig Nolen warned Sanchez about her use of vulgar language at American Popcorn. Nolen noticed that Sanchez began using vulgar language with other employees at American Popcorn during the last two or three years of her employment. Nolen did not consider Sanchez's use of foul language on the shop floor to be a serious enough disciplinary infraction to warrant anything more than a verbal warning. Between 2000 and 2003, the only written discipline Sanchez received was for attendance issues on three occasions and for one incident with a co-employee.

After March 1, 2005, and thus subsequent to Sanchez's termination, American Popcorn placed an advertisement in a newspaper seeking additional night shift employees in the same position formerly held by Sanchez.

On January 23, 2004, a follow-up examination by Dr. Keppen revealed that Sanchez's left arm had improved but was still tired, numb and tingly with weak grip strength. Dr. Van Balen examined Sanchez on January 28, 2004. His findings were similar to those of Dr. Keppen's from January 23, 2004. Dr. Van Balen agreed with Dr. Keppen that further testing was necessary given that Sanchez was "now…developing the paresthesia." Plaintiff's App. at 31.

On March 25, 2004, Sanchez was examined by Clifford Wilkinson, P.A. Wilkinson found that Sanchez was continuing to suffer paresthesia in her left hand. Wilkinson also noted in regard to Sanchez's neck motion that "with rotation to the right or lateral bending to the right she does experience pulling sensation in left shoulder." Plaintiff's App. at 39.

Sanchez subsequently no longer had health insurance and sought treatment at reduced fee clinic, Siouxland Community Health. Pain and weakness in Sanchez's left arm was noted at the clinic. Sanchez was placed on Bextra. On September 30, 2004, Sanchez was seen by Dr. Thomas Clark, a neurologist. Dr. Clark made the following notes on Sanchez's medical condition:

> She has evidence of involvement of a branch of the spinal accessory nerve with weakness of the trapezius muscle. This appears to be secondary to injury to the posterior triangle of the cervical spine on the left. The brisk reflexes and nondermatomal sensory changes could suggest irritation of the cord.

Plaintiff's App. at 42. Dr. Clark recommended a cervical MRI and more focused electrodiagnostic studies of Sanchez's left shoulder.

After reviewing an EMG study of Sanchez, which was unavailable at the time of his initial examination, Dr. Clark further concluded:

> In my report of September 30th, I indicated that Ms. Sanchez had weakness of the trapezius on the left side. This is most likely related to a peripheral lesion of the eleventh cranial nerve or spinal accessory nerve. Most commonly this is related to injury to the nerve as it traverses the posterior triangle of the neck or possibly secondary to a cervical spinal lesion.

Plaintiff's App. at 43.

On October 29, 2004, Sanchez was seen by Dr. Marky in order to perform the more focused electrodiagnostic studies recommended by Dr. Clark. The cervical MRI revealed degenerative changes with more prominent findings on the C5-6 on the left side contributing to mild left C6 forminal stenosis and mild bilateral forminal stenosis from changes at C6-7. On January 6, 2006, Sanchez was examined by Dr. Myung Cho, a doctor of physical rehabilitative medicine. Dr. Cho opined that Sanchez suffered from cervical radiculopathy caused by the injury on October 14, 2003 and recommended a surgical consultation.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

The parties here agree generally on the standards applicable to a motion for summary judgment. Rule 56 of the Federal Rules of Civil Procedure provides that a defending party may move, at any time, for summary judgment in that party's favor "as to all or any part" of the claims against that party. FED. R. CIV. P. 56(b). "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). As this court has explained on a number of occasions, applying the standards of Rule 56, the judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Bunda v. Potter*, 369 F. Supp. 2d 1039, 1046 (N.D. Iowa 2005); *Steck v. Francis*, 365 F. Supp. 2d 951, 959-60 (N.D. Iowa 2005); *Lorenzen v. GKN Armstrong Wheels, Inc.*, 345 F. Supp. 2d 977, 984 (N.D. Iowa 2004); *Nelson v. Long Lines Ltd.*, 335 F. Supp. 2d 944, 954 (N.D. Iowa 2004); *Soto v.*

*John Morrell & Co.*, 315 F. Supp. 2d 981, 988 (N.D. Iowa 2004); *see also Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir. 1990). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Quick*, 90 F.3d at 1377. Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1107 (8th Cir. 1998); *Reed v. Woodruff County, Ark.*, 7 F.3d 808, 810 (8th Cir. 1993). When a moving party has carried its burden under Rule 56(c), the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324; *Rabushka ex. rel. United States v. Crane Co.*, 122 F.3d 559, 562 (8th Cir. 1997); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 511 (8th Cir. 1995); *Beyerbach v. Sears*, 49 F.3d 1324, 1325 (8th Cir. 1995). An issue of material fact is "genuine" if it has a real basis in the record. *Hartnagel*, 953 F.2d at 394 (citing *Matsushita Elec. Indus.*, 475 U.S. at 586-87). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," i.e., are "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Beyerbach*, 49 F.3d at 1326; *Hartnagel*, 953 F.2d at 394. If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party

is "entitled to a judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323; *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir. 1997). Ultimately, the necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994).

The Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be used in employment discrimination cases." *See Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994). This exceptional deference shown the nonmoving party is warranted, according to the Eighth Circuit Court of Appeals, "Because discrimination cases often turn on inferences rather than on direct evidence . . . ." *E.E.O.C. v. Woodbridge Corp.*, 263 F.3d 812, 814 (8th Cir. 2001) (*en banc*) (citing *Crawford*, 37 F.3d at 1341; *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999)), and because "intent" is generally a central issue in employment discrimination cases. *Christopher v. Adam's Mark Hotels*, 137 F.3d 1069, 1071 (8th Cir. 1998) (citing *Gill v. Reorganized Sch. Dist. R-6, Festus, Mo.*, 32 F.3d 376, 378 (8th Cir. 1994)). Nonetheless, this exercise of judicial prudence "cannot and should not be construed to exempt" from summary judgment, employment discrimination cases involving intent. *Christopher*, 137 F.3d at 1071 (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 959 (8th Cir. 1995)). The fact remains that "the ultimate burden of persuading the trier of fact that the defendants intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Furthermore, "where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1315 (8th Cir. 1996) (quoting *Crain v. Bd. of Police Comm'rs*, 920 F.2d 1402, 1405-06

(8th Cir. 1990)).  The court will apply these standards to the defendants' Motion for Summary Judgment.

However, the court must first observe that stating the legal principles of summary judgment in employment discrimination cases is a simple task.  Applying those principles to the paper record that forms the judicial crucible that decides which plaintiffs may proceed to trial and which get dismissed is far more daunting.  Missing in the standard incantation of summary judgment principles is the role of experience.  Justice Oliver Wendell Holmes wrote, "The life of the law has not been logic; it has been experience." OLIVER WENDELL HOLMES, THE COMMON LAW 1 (1881).  Thus, experience teaches that thoughtful deliberation of summary judgment in employment discrimination cases is grounded in the consideration of each case through a lens filtered by the following observations.  Employment discrimination and retaliation, except in the rarest cases, is difficult to prove.  It is perhaps more difficult to prove today—more than forty years after the passage of Title VII—than during Title VII's earlier evolution, and a dozen years after the passage of the FMLA and some sixteen years after the passage of the ADA.  Today's employers, even those with only a scintilla of sophistication, will neither admit discriminatory or retaliatory intent, nor leave a well-developed trail demonstrating it. *See, e.g., Riordan v. Kempiners*, 831 F.2d 690, 697-98 (7th Cir. 1987).  Because adverse employment actions almost always involve a high degree of discretion, and most plaintiffs in employment discrimination cases are at will, it is a simple task for employers to concoct plausible reasons for virtually any adverse employment action ranging from failure to hire to discharge.  This is especially true, because the very best workers are seldom employment discrimination plaintiffs due to sheer economics:  Because the economic costs to the employer for discrimination are proportional to the caliber of the employee, discrimination against the best employees is the least cost effective. *See, e.g., id.*  Rather,

12

discrimination plaintiffs tend to be those average or below-average workers—equally protected by Title VII, the ADA, the ADEA, or the FMLA—for whom plausible rationales for adverse employment actions are readily fabricated by employers with even a meager imagination. *See, e.g., id.* Consequently, with both the legal standards for summary judgment and the teachings of experience in hand, the court turns to consideration of the parties' arguments for and against summary judgment.

### B. Sanchez's Claim Under The FMLA

Defendant American Popcorn asserts that it is entitled to summary judgment on plaintiff Sanchez's FMLA claim for two reasons: First, defendant American Popcorn claims that Sanchez cannot establish a *prima facie* case under the FMLA because she did not suffer from a serious health condition and second, that Sanchez cannot establish a *prima facie* case under the FMLA because she did not request FMLA notice before being terminated. Plaintiff Sanchez disputes both of American Popcorn's contentions.

The Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601-2654, "entitles eligible employees to take a total of twelve weeks of leave during a twelve-month period due to 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005) (quoting 29 U.S.C. § 2612(a)(1)(D)); *Sanders v. May Dep't Stores Co.*, 315 F.3d 940, 943 (8th Cir.), *cert. denied*, 539 U.S. 942 (2003); *Darby v. Bratch*, 287 F.3d 673, 679 (8th Cir. 2002). Furthermore, "[w]hen an employee completes her FMLA leave, she is generally entitled to be restored to the position she occupied before she took leave." *Id.* (citing 29 U.S.C. § 2614(a)(1)); *Darby*, 287 F.3d at 679 ("'[U]pon return from FMLA leave, employees are entitled to reinstatement to the same or an equivalent position without the loss of benefits . . . .'") (quoting *Spangler v.*

*Federal Home Loan Bank of Des Moines*, 278 F.3d 847, 851 (8th Cir. 2002)). Also, the FMLA "prohibits employers from discriminating against employees for exercising their rights under the Act." *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir. 2002) (citing 29 U.S.C. §§ 2612, 2615(a)(2) (2000)).

Because the FMLA grants valuable leave and restoration rights to eligible employees, it also secures these rights against unlawful infringement. The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. 29 U.S.C. § 2615(a)(1). A violation of this provision creates what is commonly known as the interference/entitlement theory of recovery. 29 U.S.C. § 2617; *see, e.g., Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir.2002).

To establish a *prima facie* case for discrimination under the FMLA, the plaintiff must demonstrate that: (1) she is protected under the FMLA; (2) she suffered an adverse employment decision; and (3) either that the plaintiff was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because of the plaintiff's request for leave. *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 160 (1st Cir. 1998). American Popcorn's motion for summary judgment centers on the first step in the analysis of Sanchez's FMLA claim. Therefore, the court turns to consider that step of the analysis.

### 1. Serious Medical Condition

The parties dispute whether Sanchez can make an adequate showing on the first element of her *prima facie* case. American Popcorn initially asserts that Sanchez did not suffer from a serious medical condition within the meaning of the FMLA and therefore she is not entitled to take leave under the FMLA.

Congress enacted the FMLA "to entitle employees to take reasonable leave for

medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition." 29 U.S.C. § 2601(b)(2). Thus, employees who qualify for leave under the FMLA are entitled to take leave under those four situations specified in the FMLA. Sanchez relies on only one: "Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Thus, the court must first address the issue of whether Sanchez's shoulder injury constitutes a "serious health condition" within the meaning of the FMLA.

The FMLA defines "serious health condition" as follows:

> The term "serious health condition" means an illness, injury, impairment, or physical or mental condition that involves--
> (A) inpatient care in a hospital, hospice, or residential medical care facility; or
> (B) continuing treatment by a health care provider.

29 U.S.C. § 2611(11). There is no suggestion that Sanchez ever received inpatient care for her shoulder injury, so her condition plainly fails to satisfy the requirements of 29 U.S.C. § 2611(11)(A). Thus, whether her shoulder injury qualifies as a "serious health condition" turns on whether it constitutes "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

The United States Department of Labor's regulations provide a more detailed explanation of what qualifies as a "serious health condition" involving continuing treatment under the FMLA:

> (a) For purposes of FMLA, "serious health condition" entitling an employee to FMLA leave means an illness, injury, impairment, or physical or mental condition that involves:
>
> . . . .

(2) *Continuing treatment* by a health care provider. A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:

(i) A period of incapacity (i.e., inability to work, attend school or perform other regular activities due to a serious health condition, treatment thereof, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

(A) Treatment two or more times by a health care provider . . . or

(B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

. . . .

(iii) Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:

(A) Requires periodic visits for treatment by a health care provider . . .;

(B) Continues over an extended period of time . . .; and

(C) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.)

. . . .

(v) Any period of absence to receive multiple treatments (including any period of recovery therefrom) by a health care provider or by a provider of health care services under orders of, or on referral by, a health care provider, either for restorative surgery after an accident or other injury, or for a condition that would likely result in a period of incapacity of more than three consecutive calendar days in the absence of medical intervention or treatment, such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), kidney disease (dialysis).

(b) Treatment for the purposes of paragraph (a) of this

section includes (but is not limited to) examinations to determine if a serious health condition exists and evaluations of the condition. Treatment does not include routine physical examinations. . . Under paragraph (a)(2)(i)(B), a regimen of continuing treatment includes, for example, a course of prescription medication (e.g., an antibiotic) or therapy requiring special equipment to resolve or alleviate the health condition (e.g., oxygen). A regimen of continuing treatment that includes ... activities that can be initiated without a visit to a health care provider, is not, by itself, sufficient to constitute a regimen of continuing treatment for purposes of FMLA leave.

. . . .

(e) Absences attributable to incapacity under paragraphs (a)(2)(ii) or (iii) qualify for FMLA leave even though the employee . . . does not receive treatment from a health care provider during the absence, and even if the absence does not last more than three days. For example, an employee with asthma may be unable to report for work due to the onset of an asthma attack or because the employee's health care provider has advised the employee to stay home when the pollen count exceeds a certain level.

29 C.F.R. § 825.114.

Therefore, in order to show that she was entitled to FMLA protection under this provision, Sanchez must come forward with evidence that tends to demonstrate a period of incapacity of at least three consecutive days and related treatment two or more times by a health care provider. American Popcorn argues that Sanchez's shoulder injury does not meet the FMLA's requirements for a serious health condition because her shoulder injury did not cause her to miss three consecutive days of work. Sanchez, on the other hand, contends that her shoulder injury does satisfy the definition of serious health condition found in § 825.114 because she was told by Rosa Bailey not to report for work the following two days because Dr. Van Balen had informed Gregory Hoffman earlier that day

that Sanchez should "no longer work for American Popcorn", Plaintiff's App. at 24, and when she returned to the job following that absence, her employment was terminated. Moreover, Sanchez points to the fact that after she was fired, her shoulder injury required her to seek out a health care provider for treatment, receive no less than nine physical therapy sessions and a course of treatments that included injections into her shoulder and her being placed on the prescription drug Bextra. Given this record, which the court must view in the light most favorable to Sanchez and give her the benefit of all reasonable inferences that can be drawn from these facts, *see Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Quick*, 90 F.3d at 1377, the court concludes that Sanchez has generated a genuine issue of material fact on the question of whether she suffered from a serious medical condition. Therefore, this portion of American Popcorn's motion for summary judgment is denied.

### 2. Request For FMLA Leave

Defendant American Popcorn also asserts that Sanchez cannot establish a *prima facie* case because she did not request FMLA leave prior to the termination of her employment. Sanchez contends that she was terminated so soon after her injury that she never had the opportunity to seek leave under the FMLA. Sanchez points to the fact that American Popcorn decided to terminate Sanchez within two weeks of her shoulder injury and within one day of Dr. Van Balen's telephone call to Hoffman concerning her injury. Moreover, Sanchez asserts that American Popcorn's stated reason for terminating her employment, that it was the result of a reduction in force ("RIF") caused by an economic slowdown and Sanchez's poor work record, is pretextual. Sanchez notes that she was the only employee

on day shift fired due to the RIF and her termination came eight months after all the prior terminations under the RIF.

Given this record, and Sanchez's need for immediate and continued medical care after her termination, the court concludes that Sanchez has generated a genuine issue of material fact on the question of whether she would have sought leave under the FMLA from a serious medical condition if she had not been fired. Therefore, this portion of American Popcorn's motion for summary judgment is also denied.

### C. Sanchez's Disability Claims

American Popcorn contends that it is entitled to summary judgment on Sanchez's disability discrimination claims, because Sanchez is not "disabled" within the meaning of the ADA or the ICRA.[4] American Popcorn argues that Sanchez's shoulder injury does not substantially limit Sanchez's ability to work or any other major life activities. In resistance to American Popcorn's Motion For Summary Judgment, Sanchez contends that she was "disabled" within the meaning of the ADA because American Popcorn perceived her to be disabled. American Popcorn alternatively argues that if Sanchez can establish a prima facie case of disability discrimination under the ADA, American Popcorn can set out

---

[4]The court is aware that Sanchez has asserted disability discrimination claims under both the ADA and state law. However, the parties have not argued, and the court cannot find, that there is some significant difference between the way "disability" is defined under the ADA and the way it is defined under the Iowa Civil Rights Act. *See, e.g., Bearshield v. John Morrell & Co.*, 570 N.W.2d 915, 918 (Iowa 1997) ("Given the common purposes of the ADA and the ICRA's prohibition of disability discrimination, as well as the similarity in the terminology of these statutes, we will look to the ADA and underlying federal regulations in developing standards under the ICRA for disability discrimination claims. [Citations omitted]. . . . Given the identity of the applicable legal principles and analytical framework with respect to the question of whether one has a disability under the ADA and the ICRA, our subsequent discussion of whether [the plaintiff] is disabled applies equally to her claims under both statutes."). Therefore, the court's discussion of "disability" here applies equally to Sanchez's claims under the ADA and the ICRA.

legitimate, nondiscriminatory reasons for her termination.

## 1. Analysis

To establish a *prima facie* case of disability discrimination under the ADA, an employee "must show that (1) the employee is disabled within the meaning of the ADA; (2) the employee is qualified (with or without reasonable accommodation) to perform the essential functions of a job; and (3) the employee suffered an adverse employment action because of the disability." *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1034 (8th Cir. 2005); *accord Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1044 (8th Cir. 2005); *Kincaid v. City of Omaha*, 378 F.3d 799, 804 (8th Cir. 2004);*Wood v. Crown Redi-Mix, Inc.*, 339 F.3d 682, 684 (8th Cir. 2003); *Longen v. Waterous*, 347 F.3d 685, 688 (8th Cir. 2003); *Webb v. Mercy Hosp.*, 102 F.3d 958, 959-60 (8th Cir. 1996). The first element requires Sanchez to show—or at this juncture, show that there is a genuine issue of material fact—that she is either actually disabled, had a record of a disability or was "regarded as" disabled by American Popcorn. *See* 42 U.S.C. § 12102(2) (defining disability as including having "a physical or mental impairment that substantially limits one or more of the major life activities of such individual", and "being regarded as having such an impairment").

## 2. Actual disability

As the Eighth Circuit Court of Appeals has explained,

> "Merely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 195, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002); *see Aucutt v. Six Flags Over Mid-Am., Inc.*, 85 F.3d 1311, 1318-19 (8th Cir. 1996). Determining whether a major life activity has been substantially limited is an individualized inquiry. Thus, "if a person is taking measures to correct for, or mitigate, a

physical or mental impairment, the effects of those measures—both positive and negative—must be taken into account." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999).

*Brunke v. Goodyear Tire and Rubber Co.*, 344 F.3d 819, 821 (8th Cir. 2003). Furthermore,

> In *Toyota Motor Manufacturing, Kentucky., Inc. v. Williams*, 534 U.S. 184, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002), the Supreme Court held that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Id.* at 198, 122 S. Ct. 681. Although *Williams* concerned a limitation with regard to the performance of manual tasks, we recently explained that its holding applies to ADA claims concerning non-manual-task limitations. *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1025 (8th Cir. 2003); *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 715 (8th Cir. 2003). In [each] case, therefore, we will consider whether each of [the plaintiff's] impairments "prevents or severely restricts" [the plaintiff] from performing a major life activity. *See Williams*, 534 U.S. at 198, 122 S. Ct. 681. In fulfilling this inquiry we should also consider (1) the nature and severity of [the plaintiff's] impairment, (2) its duration or anticipated duration, and (3) its long-term impact. *See* 29 C.F.R. § 1630.2(j)(2)(2002); *Cooper v. Olin Corp., Winchester Div.*, 246 F.3d 1083, 1088 (8th Cir. 2001).

*Wood*, 339 F.3d at 685.

The court notes that in her brief in resistance to American Popcorn's Motion For Summary Judgment, Sanchez makes no assertion that because of her shoulder condition, she is substantially limited in any major life activity. Thus, the court concludes based on the record evidence, that Sanchez has failed to generate a genuine issue of material fact that she is "disabled" within the meaning of the ADA and Iowa law. *See* Fed. R. Civ. P.

56(e) (to defeat a motion for summary judgment, the opposing party must go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial"); *Celotex*, 477 U.S. at 324. Thus, Sanchez's disability discrimination claims under federal and state law cannot proceed on the basis of "actual" disability. Therefore, this portion of American Popcorn's Motion for Summary Judgment is granted.

### 3. *Perceived disability*

#### a. *Prima facie case and causation*

Sanchez has also advanced her ADA claim under the theory that she falls under the protective umbrella of the ADA by virtue of being "regarded as" or "perceived" as disabled by American Popcorn. That is to say that "[a] person may be disabled under the ADA if, notwithstanding the absence of an actual disability, he is perceived or 'regarded as' having an impairment that substantially limits a major life activity." *Weber v. Strippit, Inc.*, 186 F.3d 907, 914 (8th Cir. 1999) (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999)); *accord Costello v. Mitchell Public Sch. Dist. 79*, 266 F.3d 916, 924 (8th Cir. 2001) ("To be regarded as disabled under the ADA, an individual must show that she has an impairment that 'does not substantially limit major life activities but is treated by a covered entity as constituting such limitation.'") (quoting 29 C.F.R. § 1630.2(1)(1); and citing *Cody v. CIGNA Healthcare, Inc.*, 139 F.3d 595, 598-99 (8th Cir. 1998)); *Brunko v. Mercy Hosp.*, 260 F.3d 939 (8th Cir. 2001) ("To be regarded as disabled under the ADA, Brunko would have to show that Mercy mistakenly believed that she had a physical impairment that substantially limited one or more major life activities, or Mercy mistakenly believed that she had an actual, nonlimiting impairment which substantially limited one or more major life activities.") (citing *Sutton*, 527 U.S. at 489). By including individuals who are regarded as disabled within the ambit of the ADA, Congress intended

to combat the effects of stereotypes that "work to the disadvantage of persons with or regarded as having disabilities." *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir. 1995). As this court explained in *Simonson v. Trinity Regional Health System*, 221 F. Supp.2d 982 (N.D. Iowa 2002), *aff'd*, 336 F.3d 706 (8th Cir. 2003), in "regarded as" actions,

> it is not a question of whether the defendants treated the plaintiff adversely "because of his or her feelings about the plaintiff's physical or mental impairment," *Weber v. Strippit*, Inc., 186 F.3d 907, 915 (8th Cir. 1999), but a question of whether the defendants' treatment of the plaintiff was a result of the defendants' harboring "'archaic attitudes,' erroneous perceptions, and myths that work to the disadvantage of persons with or regarded as having disabilities." *Brunko v. Mercy Hosp.*, 260 F.3d 939, 942 (8th Cir. 2001).

*Simonson*, 221 F. Supp.2d at 990.

To survive this motion for partial summary judgment, Sanchez must produce sufficient evidence that would allow a reasonable jury to conclude that American Popcorn either (1) mistakenly believed that Sanchez had a physical impairment that substantially limited one or more major life activities, or (2) mistakenly believed that an actual, though nonlimiting, impairment substantially limited one or more of her major life activities. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999); *accord Brunko*, 260 F.3d at 942 (citing *Sutton*, 527 U.S. at 489). Sanchez's principal argument is that the circumstances of her termination, American Popcorn's firing her within two weeks of injuring her shoulder and within twenty-four hours of Dr. Van Balen's telephone call to American Popcorn's plant manager concerning her injury, shows that American Popcorn regarded her as having a disability that limited her in the major life activity of working.

To be regarded as substantially limited in the life activity of working, a plaintiff

must be regarded as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Cooper*, 246 F.3d at 1089 (citing *Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 523-24 (1999)). Inability to perform one particular job does not constitute a substantial limitation on working. *Id.* A plaintiff must show that because of his impairment he has suffered a significant reduction in meaningful employment opportunities. *Id.* (citing *Webb v. Garelick Mfg. Co.*, 94 F.3d 484, 488 (8th Cir. 1996)). Factors to be considered in determining whether a plaintiff is restricted from a class of jobs include his expertise, background, and job expectations. *Id.* (citing *Taylor v. Nimock's Oil Co.*, 214 F.3d 957, 96-61 (8th Cir. 2000)).

On the record presented here, the court concludes that Sanchez has sustained her burden of generating a genuine issue of material fact that American Popcorn regarded her as unable to work in a broad class of jobs. The facts that Sanchez was fired within two weeks of her injury and that such firing came on the heals of Dr. Van Balen's telephone call to American Popcorn's plant manager support Sanchez's claim that American Popcorn regarded her as substantially limited in the major life activity of working. It must be remembered that Sanchez claims that she was told by Rosa Bailey soon after this telephone call not to report for work the following two days because Dr. Van Balen had informed Gregory Hoffman earlier that day that Sanchez should "no longer work for American Popcorn." Plaintiff's App. at 24. Viewing this statement in the light most favorable to Sanchez and giving her the benefit of all reasonable inferences that can be drawn from it, *see Matsushita Elec. Indus. Co.*, 475 U.S. at 587, the court concludes that a reasonable fact finder could find that she was regarded as having a disability that limited her in the major life activity of working. Thus, the court concludes that Sanchez has met the first

element of a *prima facie* case of a "regarded as" disability claim under the ADA.[5] Therefore, this portion of defendant American Popcorn's Motion For Summary Judgment is also denied.

### b. *American Popcorn's legitimate reason*

At the second stage in the analysis, in order to dispel the inference of discrimination arising from the *prima facie* showing, the employer must articulate, but need not prove, a legitimate, non-discriminatory reason for its employment decision. *See Robinson v. Potter*, 453 F.3d 990, 994 (8th Cir. 2006); *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1034 (8th Cir. 2005); *Kincaid v. City of Omaha*, 378 F.3d 799, 804 (8th Cir. 2004). The employer's explanation of its actions must be "clear and reasonably specific," *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258 (1981), but the employer's burden of production has nonetheless been held to be "exceedingly light." *See Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004) (Title VII case), *cert. denied*, 126 S. Ct. 478 (2005); *Perryman v. Johnson Prods. Co., Inc.*, 698 F.2d 1138, 1142 (11th Cir. 1983) (Title VII case). The employer "need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof." *Cooper*, 390 F.3d at 725.

In response to Sanchez's *prima facie* case, American Popcorn has asserted, as a legitimate, non-discriminatory ( *i.e.,* non-retaliatory) reason for its decision to terminate Sanchez, that her position was eliminated as a result of a RIF caused by a downturn in business as well as Sanchez's overall employment history, which American Popcorn asserts included problems with discipline, absenteeism and cooperativeness. Such an assertion satisfies the light burden on an employer at the second stage of the *McDonnell*

---

[5]The parties do not dispute that Sanchez can establish the other elements of a *prima facie* case of disability discrimination under the ADA and the ICRA.

*Douglas* burden-shifting analysis.

### c.    *Pretext*

If the employer comes forward with evidence of a legitimate, nondiscriminatory reason for its treatment of the employee, the employee must then point to some evidence that the employer's proffered reason is pretextual.    An employee can prove pretext in several ways.   *See Morris v. Winnebago Indus., Inc.*, 936 F. Supp. 1509, 1524 (N.D. Iowa 1996) (noting that to show pretext, the employee must "'demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence . . . .'") (quoting *Kowalski v L & F Prods.*, 82 F.3d 1283, 1289 (3d Cir. 1996)).   First, the employee can show that the employer's proffered explanation has no basis in fact. *Logan v. Liberty Healthcare Corp.,* 416 F.3d 877, 881 (8th Cir. 2005).   "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves,* 530 U.S. at 143.   Also, the employee can prove pretext by showing that the employer varied from its normal policy or practice to address the employee's situation. *Erickson v. Farmland Indus., Inc.,* 271 F.3d 718, 727 (8th Cir. 2001).   For example, the employee could show that the employer routinely treated similarly situated employees who were not in the protected class more leniently.   *Smith v. Diffee Ford-Lincoln-Mercury, Inc.,* 298 F.3d 955, 960 (10th Cir. 2002). Likewise, the employee could demonstrate that she was discharged pursuant to an inconsistent policy. *Wallace v. Sparks Health Sys.,* 415 F.3d 853, 860 (8th Cir. 2005).

Here, the court finds that Sanchez has pointed to more than adequate evidence to generate genuine issues of material fact that American Popcorn's proffered explanation is unworthy of credence, suggesting that the proffered reason is a pretext, and that the real

reason was based on her perceived disability. In short, Sanchez relies on facts previously discussed elsewhere in this opinion—namely, the fact that no other employees were fired from American Popcorn under the RIF in the eight months proceeding the date of her termination and no other employees were terminated after Sanchez based on the RIF, the company's decision to terminate Sanchez came only after Dr. Van Balen called Hoffman regarding Sanchez's condition, and that Sanchez was told by Rosa Bailey soon after this telephone call not to report for work the following two days because Dr. Van Balen had informed Gregory Hoffman earlier that day that Sanchez should "no longer work for American Popcorn."

Taking these facts as true, this evidence seriously undercuts the credibility of American Popcorn's explanations that Sanchez was terminated as a result of a RIF and her work history. Sanchez's evidence of pretext, if believed and when combined with the evidence supporting the *prima facie* case, is sufficient evidence from which a reasonable jury could find that she was discharged based upon a perceived disability. Thus, the court concludes that plaintiff Sanchez has generated a genuine issue of material fact on the question of whether American Popcorn's stated reasons for her dismissal were a pretext for her firing. Therefore, this portion of defendant American Popcorn's Motion For Summary Judgment is also denied.

### D. Sanchez's State Common Law Claim

Defendant American Popcorn asserts that if the court dismisses the claims found in Counts I through III, the court should decline to exercise its supplemental jurisdiction over Sanchez's Iowa state common law claim for retaliatory discharge in violation of public policy. Because the court has not granted summary judgment on all of the claims found in Counts I through III, the court need not entertain the question of whether it would have

exercised its supplemental jurisdiction over Sanchez's Iowa state common law claim if all of her federal claims had been dismissed.

## III.  CONCLUSION

For the reasons discussed above, defendant American Popcorn's Motion For Summary Judgment is granted in part and denied in part.  The court initially concludes that plaintiff Sanchez has generated a genuine issue of material fact on the question of whether she suffered from a serious medical condition.  The court also concludes that plaintiff Sanchez has generated a genuine issue of material fact on the question of whether she would have sought leave under the FMLA for a serious medical condition if she had not been fired.  Therefore, the portion of American Popcorn's motion for summary judgment related to Sanchez's FMLA claim contained in Count I is denied.  The court further concludes that because Sanchez makes no assertion that as a result of her shoulder condition she is substantially limited in any major life activity, Sanchez has failed to generate a genuine issue of material fact that she is actually disabled within the meaning of the ADA and Iowa law.  Therefore, the portion of American Popcorn's Motion for Summary Judgment related to Sanchez's actual disability claim contained in Count II and Count IV is granted.  The court also concludes that on the summary judgment record before it that a reasonable fact finder could find that Sanchez was regarded as having a disability that limited her in the major life activity of working.  As a result, the court concludes that Sanchez has established a *prima facie* case of disability discrimination under the ADA.  Moreover, the court concludes that plaintiff Sanchez has generated a genuine issue of material fact on the question of whether American Popcorn's stated reasons for her dismissal were a pretext for her firing.  Therefore, the portion of American Popcorn's Motion for Summary Judgment related to Sanchez's perceived  disability claim contained

in Count III and Count IV is denied.  Finally, because the court has not granted summary judgment on all of Sanchez's federal law claims found in Counts I through III, the court need not entertain the question of whether it would have exercised its supplemental jurisdiction over Sanchez's Iowa state common law claim if all of her federal claims had been dismissed.

**IT IS SO ORDERED.**

**DATED** this 14th day of September, 2006.

MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA